UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 23-cr-10130-IT |
| LITANG LIANG, | ) ) ) | |
| Defendant. | ) ) | |

## GOVERNMENT'S TRIAL BRIEF

The United States files this brief to address issues which it anticipates may arise during the trial of this matter.

### THE CHARGES

On May 4, 2023, the Defendant was indicted by a grand jury on two counts: (1) conspiracy to act as an agent of a foreign government; and (2) acting as an agent of a foreign government without notice to the Attorney General. According to the Indictment, from in or around 2018 through at least 2022, the Defendant conspired to act and did act within the United States as an agent of the People's Republic of China ("PRC") government by providing PRC government officials with information on Boston-area individuals and organizations; organizing a counter-protest against pro-democracy dissidents; providing photographs of and information about dissidents to PRC government officials; and providing the names of potential local recruits to the PRC's Ministry of Public Security ("MPS"), an agency that is responsible for investigating political dissidents. *See generally* Indictment, Dkt. No. 1. The Indictment also lays out the evidence indicating that the Defendant performed these acts pursuant to the direction or control of PRC government officials.

The government's case will show that beginning in or around 2018, the Defendant communicated with numerous PRC government officials, and began to act subject to their direction or control in a variety of ways. For example, in 2018, PRC government officials directed the Defendant to provide information on local government officials and other individuals within the local Chinese community. The Defendant provided that information. He also provided information to PRC government officials on a local individual whom he suspected of damaging PRC flags within Boston's Chinatown, and worked with another individual to provide a "blacklist," consisting of members of the local Chinese community, to PRC government officials.

Later in 2018, the Defendant traveled to the PRC at the request of PRC government officials in order to attend a meeting of the Chinese Council for Promotion of National Reunification ("CCPPNR") in Beijing. CCPPNR is an entity within the Chinese Communist Party's ("CCP") United Front Work Department ("UFWD"), and is responsible for promoting the reunification of Taiwan with the PRC – a key national security goal of the PRC. The UFWD itself is responsible for gathering intelligence on and managing relationships with individuals and organizations both inside and outside of the PRC. After attending that meeting in Beijing in October 2018, the Defendant returned to the PRC again in November 2018 and met with both UFWD and the PRC's Taiwan Affairs Office, a PRC-government agency that is responsible for implement PRC government policy vis-à-vis Taiwan. After returning from the PRC, the Defendant met in Boston in December 2018 with PRC government officials from the PRC consulate in New York – including a consular officer responsible for PRC policy towards Taiwan – and shortly thereafter founded the New England Alliance for the Peaceful Unification of China ("NEAPUC"), an organization which was itself dedicated to promoting the unification

of PRC policy goals with Taiwan. During this time, and afterwards, the Defendant reported back to PRC government officials about its membership and the work that the organization undertook.

The evidence will show that in August 2019, the Defendant, at the direction of PRC government officials, organized a counter-demonstration in Boston against a group of individuals who were protesting the PRC government's encroachment on civil liberties within Hong Kong. During this time, the Defendant was in repeated communications with numerous PRC government officials, took photographs of both the protesters and the counter-demonstrators, and sent pictures of the protesters to PRC government officials. In a November 2019 work report, the Defendant reported to PRC government officials that NEAPUC was responsible for organizing the counter-demonstration.

In September and October 2019, the evidence will show that the Defendant traveled to the PRC for the 70th anniversary of the founding of the PRC. While there, he attended another meeting of the CCPPNR, and informed a PRC government official that he "learned a lot" and that the meeting "clarified the direction of work."

In the summer of 2022, the evidence will also show that the Defendant was directed by an MPS officer resident in the PRC Embassy in Washington, D.C., to provide information on two local Chinese individuals in Massachusetts. The Defendant responded by providing the names and occupations of those individuals to the MPS officer, and indicated that they were "young and promising" and were "currently the best candidates to cultivate." The Defendant then accompanied those individuals to the PRC Embassy in Washington, D.C., to meet the MPS officer, and was photographed with the MPS officer in front of the PRC Embassy holding a plaque which said "Police."

### Count I: Conspiracy.

Count 1 charges the Defendant with conspiracy to act as an agent of a foreign government in violation of 18 U.S.C. § 371. The elements of that charge are:

<u>First</u>, that two or more persons in some way agreed to try to have Defendant Liang act as an agent of the PRC government;

<u>Second</u>, that the Defendant knowingly and intentionally joined in that agreement; and

<u>Third</u>, that one of the conspirators committed an overt act during the period of the conspiracy in furtherance thereof.

### Count II: Acting as an Agent of a Foreign Government without Prior Notification.

Count 2 charges the Defendant with acting as an agent of a foreign government (here, the PRC government) in violation of 18 U.S.C. § 951. The elements of that charge are:

<u>First</u>, that the Defendant acted in the United States as an agent of a foreign government or foreign official, specifically the government of the People's Republic of China or an official thereof;

<u>Second</u>, that the Defendant acted knowingly; and

<u>Third</u>, that the Defendant failed to notify the Attorney General that he would be acting as an agent of the foreign government or official prior to so acting.

The bar to show that the Defendant acted in the United States is low: the government need only show that the Defendant took acts "of some kind" on behalf of the foreign government, and those acts need not be criminal or even wrongful. *See U.S. v. Duran*, 596 F.3d 1283, 1293-95 (11th Cir. 2010) ("the activities that fall within § 951's purview have never been expressly or by judicial interpretation limited to those bearing upon national security or even those which by their nature are criminal or inherently wrongful;" Congress clearly intended §

951 to be a "catch-all statute that would cover all conduct taken on behalf of a foreign government;" and Section 951 reaches "*any* affirmative conduct undertaken as an agent of a foreign government"); *U.S. v. Latchin*, 554 F.3d 709, 715 (7th Cir. 2009) (affirming conviction where the evidence showed that the defendant received money from a foreign intelligence service and made calls to the foreign intelligence service, holding that the "jury did not have to find that" the defendant "actually spied" on opposition members in the United States).

In order to show that the Defendant committed the relevant acts as an agent of a foreign government, the government must prove that the Defendant "agreed to operate within the United States subject to the direction or control of a foreign government or official." 18 U.S.C. § 951(d); *see also* 28 C.F.R. § 73.1(a). Section 951 is a "general intent crime" and "knowledge of the notification requirement need not be proven by the government." *U.S. v. Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010); *U.S. v. Dumeisi*, 424 F.3d 566, 581 (7th Cir. 2005); *U.S. v. Alshahhi*, 2022 WL 2239625 at *10 (E.D.N.Y. June 22, 2022).

## TRIAL ISSUES

The government anticipates that several evidentiary and instructional issues will arise at trial and outlines below its position on these issues.

### A. Exhibits and Witnesses

Concurrent with this trial brief, the parties have filed a Joint Exhibit List identifying the exhibits each side intends to offer at trial and setting forth each side's respective objections thereto. Dkt. No. 99.

The government's exhibits at trial generally fall into several categories: (1) physical evidence and electronic devices seized during the lawful search of the Defendant's home and person; (2) verbatim translations of selected portions of WeChat conversations (both chat and

audio) that the Defendant had with co-conspirators (including various PRC government officials) and others; (3) verbatim translations of documents found during lawful searches of the Defendant's electronic devices; (4) certified non-immigrant Visa records for various PRC government officials; (5) a small number of summary exhibits that will aid the jury by presenting discrete portions of other exhibits into chronological order; and (6) photos and other items found on the Defendant's electronic devices or in the Defendant's email account. With respect to the verbatim translations, the government will introduce these exhibits through FBI Translator Sharon Seward and publish them to the jury during the testimony of S/A Nick Balent. Ms. Seward will testify regarding her qualifications and experience as a translator, as well as the methodology she utilized in completing these verbatim translations. In turn, S/A Balent's testimony will direct the jury's attention to relevant portions of these verbatim translations (which, in the case of the WeChat conversations, are lengthy) and provide context for how this evidence fits into the case.

Additionally, several of the government's exhibits are self-authenticating business records under Federal Rules of Evidence 902(11) and 803(6)-(7). This includes the certified non-immigrant Visa records, a FARA Records Certification, and certain travel records relating to the Defendant's travel to China. As required by Rules 803(6)-(7) and 902(11), these exhibits are domestic records created by the U.S. government in the course of regularly conducted activity and are supported by a custodian certification. The records and the certifications have been provided to the defense and the defense has raised no objections to the same.

The Defendant has filed a motion in limine to exclude certain of the government's trial exhibits. Dkt. No. 74. In accordance with the Court's order, Dkt. No. 98, the parties are in the process of conferring as to this motion and the government will provide the Court with the

exhibits that are the subject of the Defendant's motion as soon as possible. The Court has indicated that it intends to rule on this Motion at the pretrial conference set for January 24, 2025. *Id.*

The parties have also exchanged witness lists and filed the same with the Court. At this time, each side has identified seven witnesses that it may call. The parties have reserved the right to identify supplemental exhibits and witnesses prior to trial. The Court previously ruled on the Defendant's motion to exclude the government's proposed expert, Dr. Glenn Tiffert. Dkt. No. 96.

### B. Jury Instructions

As instructed in the Court's pretrial order, the parties have filed proposed jury instructions. Dkt. No. 68, 72. The parties have also filed their respective objections. Dkt. No. 83, 85. While the government raised several specific objections to the Defendant's proposed instructions, a key issue that infects the entirety of the Defendant's instruction is the repeated misstatement of the operative *mens rea* for the charges in this case. First, contrary to the Defendant's proposed instructions, the government need not prove that the Defendant acted "willfully" when he conspired to act and actually acted as an illegal foreign agent of the Chinese government. *See United States v. Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010) (holding that Section 951 is a general intent crime and that "a defendant need not intend to violate the law to commit a general intent crime, but he must actually intend to the act that the law proscribes"). Second, again in contrast to the Defendant's proposed instructions, the government need not prove that the Defendant knew of Section 951's notification requirement. The Court has already decided this issue and need not revisit it during the charge conference. *See United States v.*

*Liang*, 2024 WL 3431171 at *6 (citing *Duran*, 596 F.3d at 1292, for the proposition that "[K]nowledge of the notification requirement need not be proven by the government.").

### C. The Government's Proposed Stipulations

The government has proposed several stipulations to the Defendant. Broadly, these stipulations relate to (1) the Defendant's failure to notify the Attorney General that he would be acting as a foreign agent of the Chinese government; (2) chain of custody and authentication testimony for several electronic devices seized from the Defendant's residence pursuant to a court order; (3) the accuracy of certain translations; and (4) the accuracy and authenticity of certain certified Visa records relating to the Defendant's co-conspirators. The parties have met and conferred on these stipulations and have reached a preliminary agreement as to some of them. The parties anticipate making a joint filing next week setting forth the agreed upon stipulations.

Dated: January 17, 2025

Respectfully submitted,

JOSHUA S. LEVY
United States Attorney

By:   */s/ Timothy H. Kistner*
Timothy H. Kistner
Assistant U.S. Attorney

*/s/ Menno Goedman*
Menno Goedman
Trial Attorney
National Security Division

**CERTIFICATE OF SERVICE**

    I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

                                                  */s/ Timothy H. Kistner*  
                                                  Timothy H. Kistner  
                                                  Assistant U.S. Attorney